The Honorable Brian A. Tsuchida

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ETHAN NORDEAN<br>Also known as "Rufio Panman",<br><br>Defendant. | NO.  21-MJ-67 BAT<br><br>UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION |

The United States of America, by and through its attorney, the United States Attorney for the Western District of Washington, respectfully submits this memorandum in support of its oral motion that Defendant be detained pending trial pursuant to: 18 U.S.C. §§ 3142(e)(3)(C) (rebuttable presumption in favor of detention for certain offenses, including 18 U.S.C. § 1361); 3142(f)(1)(A) (crime of violence); and 3142(f)(2)(A) (serious risk of flight). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention. As noted below, there are no conditions,

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

or combination of conditions, which would ensure Defendant's presence at trial or the safety of the community if he is released.

## RELEVANT FACTS AND PROCEDURAL HISTORY

On January 6, 2021, a mob of rioters descended on the United States Capitol building in Washington, D.C., as part of a concerted effort to prevent a Joint Session of Congress from certifying the Electoral College results and declaring Joseph R. Biden, Jr., to be the 46th President of the United States of America. Whereas some of these rioters traveled to Washington, D.C., individually, a number of extremist and militia groups coordinated together to gather in Washington, expressing in advance their intent to interfere with the Electoral College certification.

One such extremist group was the Proud Boys. Proud Boys is a nationalist organization with multiple U.S. chapters and potential activity in other Western countries. The group describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other First Amendment-protected events, where certain of its members sometimes engage in acts of violence against individuals whom they perceive as threats to their values. The group has an initiation process for new members, which includes the taking of an "oath." Proud Boys members often wear the colors yellow and black, as well as other apparel adorned with Proud Boys-related logos and emblems.

Defendant, a 30-year old resident of the State of Washington, is a Proud Boys member who occupies leadership positions in the Seattle Chapter—having self-identified as both the Sergeant of Arms and the President of that Chapter at various times. Defendant has been present at a number of Proud Boys protests—including, notably, in Portland, Oregon, where he was made "internet famous" for knocking out a counter-protester during a street brawl.

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67) - 2*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970





Beginning shortly after that brawl, Defendant's stock rose within the Proud Boys and he took on a more prominent role in nationwide Proud Boys events—including the "Million MAGA March," which occurred on November 14, 2020, in Washington, D.C., and the "December Demonstration," which took place on December 12, 2020, in Washington, D.C.

Beginning as early as December 2020, public communications from Proud Boys organizers encouraged members of the Proud Boys to attend the January 6, 2021, demonstration in Washington, D.C. Such communications included messages sent by the self-described chairman of the Proud Boys, Enrique Tarrio. For example, on December 29, 2020, Tarrio posted a message on the social media site Parler about

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67) - 3*

1   the demonstration planned for January 6, 2021. Among other things, Tarrio

2   announced that the Proud Boys would "turn out in record numbers on Jan 6th but

3   this time with a twist… We will not be wearing our traditional Black and Yellow.

4   We will be incognito and we will be spread across downtown DC in smaller teams.

5   And who knows….we might dress in all BLACK for the occasion." The statement

6   about dressing in "all BLACK" is an apparent reference to dressing like the group

7   known as "Antifa," whom the Proud Boys have identified as an enemy of their

8   movement and are often depicted in the media wearing all black to demonstrations.

9   Defendant also commented on such plans to dress in disguise in the video message

10  that he posted online on January 4, 2021.

11      On January 6, 2021, Defendant and a group of people that hold themselves

12  out as Proud Boys were depicted on the east side of the U.S. Capitol. Consistent with

13  the directive issued by organizers of the Proud Boys, none of the men wore Proud

14  Boys colors of black and yellow, but were instead dressed "incognito." Indeed,

15  Defendant dressed in all black, and he wore a tactical vest. As one of the leaders of

16  the group that day, he at times carried a bullhorn.

17      Defendant and other national organizers then led the group on a march along

18  public roadways to the west side of the Capitol. As shown below, Defendant (at right

19  below) can be seen marching with Proud Boy organizer, Joseph Biggs (at left below),

20  at the front of a group of individuals on Constitution Avenue, Northwest, in the area

21  around First Street, Northwest. The group was engaged in various chants and

22  response calls, including "F*** Antifa!" and "Whose streets? Our streets!"

23

24

25

26

27

28

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE
5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



Shortly before 1:00 p.m., Defendant and Biggs marched the group to a position near the pedestrian entrance to the Capitol grounds on First Street. The entrance was secured by a small number of U.S. Capitol Police, who stood behind a waist height metal barrier.



MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67) - 5*



Shortly after that above image was captured on video, two men advanced toward the waist-high metal gate. The crowd followed, and within minutes, the crowd overwhelmed the U.S. Capitol Police officers seen at the top of the steps in the image above. The crowd then advanced toward the U.S. Capitol.

After overwhelming the pedestrian gate near the Peace Monument and other entrances, the crowd advanced on the U.S. Capitol where another line of U.S Capitol Police and barricades attempted to stop the crowd from advancing to the walls of the building. Additional people continued to arrive until an estimated thousands of people had gathered in front of the Capitol on its west side. Defendant was among the first to reach the police line in the west plaza of the Capitol.



MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67) - 6*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant remained at or near the front of the crowd as Capitol Police attempted to reform a police line. Shortly thereafter, Defendant had a brief exchange with Robert Gieswein,[1] who was among the first to enter the Capitol through a window that was broken by a person that has been identified as Proud Boy Dominic Pezzola.[2]



Shortly after Defendant conferred with Gieswein and Pezzola, at approximately 2:00 p.m., rioters began forcing their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. Gieswein, Pezzola, and others made their way to an exterior window which they broke using a riot shield and entered the Capitol building.

---

[1] On January 27, 2021, a federal grand jury sitting in the District of Columbia returned an indictment charging Gieswein with violations of 18 U.S.C. §§ 1512(c)(2), 111(a)(1) and (b), 1361, 2, and 1752(a)(1). *United States v. Robert Gieswein*, 21-cr-24 (EGS).

[2] On January 29, 2021, a federal grand jury sitting in the District of Columbia returned an indictment charging Pezzola with substantive violations of 18 U.S.C. §§ 231, 1361, 1512(c)(1) and (2), and 1752, as well as conspiracy to commit violations of 18 U.S.C. § 231, for his unlawful conduct at the Capitol on January 6, 2021, including the breaking of a window with a stolen Capitol Police riot shield. *United States v. Dominic Pezzola*, 21-cr-52 (TJK).

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67) - 7*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8



*Defendant Enters the Capitol*

9
10
11    Rather than enter with Gieswein and Pezzola, Defendant was among those who

12 entered the Capitol building after rioters forced entry and pushed past Capitol Police

13 officers. Photographs and video also show that Defendant was near the front of the crowd

14 of rioters, who collectively approached, stood off against, and vastly outnumbered

15 Capitol Police.

16
17
18
19              
20
21
22
23
24
25
26
27
28

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18





19        *Subsequent Investigation of Defendant's Role*

20        Defendant was quickly identified as a participant in the riot, due to his

21  prominent position amongst the Proud Boys and the number of images of his likeness

22  published on the Internet. In investigating Defendant's involvement on January 6,

23  2021, it quickly became apparent that he planned to participate in advance.

24  Defendant was an active poster on the social media site "Parler," where he identified

25  himself as "Rufio Panman" and utilized the username "@REBELRUFIO".

26        Defendant's Parler posts prior to January 6, 2021, indicate that he and other

27  Proud Boys members were planning in advance to organize a group that would

28  attempt to overwhelm police barricades and enter the United States Capitol building.

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67) - 9*

For example, on or about, December 27, 2020, NORDEAN posted the following message on his Parler page: "Anyone looking to help us with safety/protective gear, or communications equipment it would be much appreciated, things have gotten more dangerous for us this past year, anything helps." The post then linked to a fundraising site called "Protective gear and communications by Rufio Panman."

On or about, January 4, 2021, Defendant posted a video which he captioned "Let them remember the day they decided to make war with us." Screenshots taken from the video show NORDEAN and other Proud Boys dressed in tactical gear along with the phrase "Back the YELLOW," which is a phrase commonly used to show support for the Proud Boys.



Also on or about, January 4, 2020, Defendant shared a post by a fellow Proud Boy leader, Individual A.  Individual A posted a picture on Parler of himself and Defendant at a protest with the caption: "And fight we will."

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970





Also, on or about, January 4, 2021, Defendant posted a link that allowed users to access an episode of Defendant's video podcast, "Rebel Talk with Rufio," where Defendant interviewed Individual A about their participation in a rally in Washington, D.C., during which Individual A was stabbed, as well as other Proud Boys related matters. During that video, which is approximately 63 minutes long, the following statements were made:

1.    Defendant stated "People don't understand the price that comes with being a Patriot these days." Individual A agreed, stating: "This stuff is real. We are in a war."

2.    Defendant stated that, as President of his local Proud Boys chapter, he has been telling his "guys" that they need to "make [themselves] an enemy of this corrupt system." Defendant further stated: "The police are starting to become a problem."

3.    Defendant lamented what he perceived "blatant, rampant voter fraud" in the Presidential election." Defendant further stated that the perpetrators of voter fraud expected to be able to get away with it, because "they're relying on complacency.  I think they're relying on the Facebook posts, and that's all we're going to do."

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.   Defendant stated that he and the other Proud Boys were not going to be complacent.  Rather, they were going to "bring back that original spirit of 1776 of what really established the character of what America is.  And it's not complacency, it's not low standards. It's 'this is how it's going to be, and I don't give a god damn.'"

5.   Defendant stated that voter fraud in the Presidential election had killed democracy and added, ominously "Democracy is dead? Well, then no peace for you. No democracy, no peace."

6.   Individual A then stated, "We're coming back. We're coming to D.C. and were going to take this country back. Your gifts, and your thoughts, and your financial contributions will not go for nothing."

On or about, January 5, 2021, the day before the riots, Defendant posted the following statement: "It is apparent now more than ever, that if you are a patriot, you will be targeted and they will come after you, funny thing is that they don't realize is, is we are coming for them."

Defendant continued to post along these lines after participating in the Capitol riot. On January 8, 2021, Defendant posted a picture of himself that was taken on January 6, 2021, with the caption "Violent extremist," apparently making light of the public condemntation that he and the Proud Boys were receiving.




On January 8, 2021, Defendant posted a photo on Parler, captioned "if you feel bad for the police, you are part of the problem. . ." apparently making light of the United

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

States Capitol Police officer who was killed during the riot and the dozens of other officers who were injured by rioters because those officers used pepper spray in an attempt to contain the rioters.



Rufio Panman · @REBELRUFIO
2 days ago · 👁 13768
The honorable oath breakers. If you feel bad for the police, you are part of the problem. They care more about federal property (our property) than protecting and serving the people. BACK THE BLACK AND YELLOW



### *Search of Defendant's Residence*

On February 3, 2020, federal law enforcement officers executed a search warrant at Defendant's residence. Among the items recovered from the search were:

1.   Proof of Defendant's travel to Washington, D.C., during the time period of the Capitol Riot;

2.   Defendant's laptop computer and cellular telephone;

3.   Clothing and other items bearing Proud Boys' logos and insignia;

4.   Clothing matching the photographs above taken on January 6, 2021;

5.   Ledgers, notebooks, and other records related to Proud Boys operations;

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 13

6.   Digital camera with stored photographs;

7.   Go Pro digital video camera with stored videos;

8.   Radio system matching those seen in photographs taken on January 6, 2021, that was used by Proud Boys leaders to communicate with one another; and

9.   Valid, unsigned, U.S. Passport, issued to another individual with a comparative likeness to Defendant. (The passport was recovered from a bedside table along with a legitimate passport issued to Defendant's wife.);



## **ARGUMENT**

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise

2   detail how the United States will prove its case at trial, nor specify exactly what

3   sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986);

4   United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention

5   hearing should not be used as a discovery device and cross-examination should be

6   limited to the disputed issues, since the detention hearing is not to be turned into a

7   mini-trial and is not to be used as a subterfuge to obtain discovery. Smith, 79 F.3d at

8   1210; Williams, 798 F. Supp. at 36.

9   **1.      The United States' Stated Bases for Detention**

10      The United States seeks detention on a number of bases. First, the United

11  States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because Defendant is

12  charged with a crime of violence. Felony destruction of government property is a

13  crime of violence.  For purposes of the bail statute, as relevant to these offenses, a

14  crime of violence is defined as "an offense that has an element of the use, attempted

15  use, or threatened use of physical force against the person or property of another," if

16  that crime is punishable by ten years or more in prison.  *See* 18 U.S.C.

17  § 3142(f)(1)(A) & 16. Destruction of Property, in violation of 18 U.S.C. § 1361

18  meets those requirements. It is punishable by ten years if the property damage was

19  greater than $1,000, and its elements include the use of physical force against the

20  property of another.  *See United States v. Khatallah*, 316 F. Supp. 2d 207, 213

21  (D.D.C. 2018) (Cooper, J.) (holding that destruction of government property under

22  a substantially similar statute, 18 U.S.C. § 1363, satisfies the elements clause to be a

23  crime of violence). Defendant is properly charged with that offense, as noted above,

24  because the Proud Boys' actions on January 6, 2021, appeared to have been

25  coordinated and Defendant spoke directly with Gieswein shortly before Pezzola and

26  Gieswein entered the Capitol Building through the exterior window broken by

27  Pezzola.

28

1    The United States is also seeking detention pursuant to 18 U.S.C.

2    § 3142(e)(3)(C), which provides a rebuttable presumption of detention if there is

3    probable cause to believe that the defendant committed "an offense listed in section

4    2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of

5    imprisonment of 10 years or more is prescribed," and 18 U.S.C. § 3142(f)(1)(A)

6    which authorizes a detention hearing under such circumstance upon motion by the

7    United States. That rebuttable presumption applies to Defendant because 18 U.S.C.

8    § 1361 is specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B) and carries a

9    maximum sentence of ten years in prison where, as here, damage or attempted

10   damage to property exceeds $1,000. The Complaint and Statement of Facts

11   establishes the probable cause to believe that Defendant committed this offense.

12   Once a rebuttable presumption is created, it imposes a burden of production

13   on the defendant to offer contrary credible evidence. See United States v. Alatishe,

14   768 F.2d 364, 371 (D.C. Cir. 1985). However, "[t]he presumption is not erased when

15   a defendant proffers evidence to rebut it; rather the presumption 'remains in the case

16   as an evidentiary finding militating against release, to be weighed along with other

17   evidence relevant to the factors listed in § 3142(g)." United States v. Hir, 517

18   F.3d 1081, 1086 (9th Cir. 2008), (quoting United States v. Dominguez, 783 F.2d

19   702, 707 (7th Cir. 1986)); see also United States v. Ali, 793 F. Supp.2d 386, 387-88

20   (D.D.C. 2011); United States v. Bess, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The

21   presumption] is incorporated into the § 3142(g) factors considered by the court when

22   determining whether conditions of release can be fashioned or whether the defendant

23   must be detained pretrial.").

24   The United States also seeks detention pending trial pursuant to 18 U.S.C. §

25   3142(f)(2)(A) because Defendant poses a serious risk of flight.

26

27

28

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**2.      The Bail Reform Act Factors All Favor Detention Given Defendant's Risk of Flight and Danger to the Community**

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. As noted below, each of these factors weighs in favor of pretrial detention in this case.

A.  The Nature and Circumstances of the Offenses Charged Weigh in Favor of Detention

The nature and circumstances of the charged offenses weigh heavily in favor of detention. Defendant, a member of a right-wing militia, knowingly and willfully participated in a riot that was designed to prevent the United States Congress from certifying the results of the 2020 Presidential election. Not only did Defendant participate in the riot, but his public statements indicate that he was part of the group that helped plan how the Proud Boys would act during the riot. This was evidenced on the ground, when Defendant spoke with Gieswein shortly before Pezzola and Gieswein entered the Capitol Building through the exterior window broken by Pezzola.

Words alone may never communicate the true nature of the crimes that were carried out on January 6. It is an event that cannot be measured in the number dead, injured, or wounded, but rather in the destabilizing effect that it has had on this country. This destabilizing effect is precisely what Defendant envisioned when he helped plan, helped lead, and participated in the Proud Boys' participation in the riot at the Capitol building.

B.  The Weight of the Evidence Against the Defendant Weighs in Favor of Detention

The weight of the evidence against Defendant weighs strongly in favor of detention. Dozens of videos and photographs exist to prove Defendant's participation

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67) - 17*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   in the Capitol riot on January 6, 2021. The items seized from Defendant's home on

2   February 3, 2021, confirm Defendant's identity in those photographs.

3        C. The Defendant's History and Characteristics Weigh in Favor of Detention

4           As noted above, Defendant has, since at least 2018, been an active participant

5   and leader in the Proud Boys. Defendant relished in the internet fame he earned after

6   knocking out the counter-protester in Portland, Oregon, and he used that fame to

7   leverage an interview on Alex Jones' television show "InfoWars," where Defendant

8   actively recruited new members to join Proud Boys and participate in future acts of

9   violence. This interview was later posted on YouTube where it could continue to be

10  viewed and utilized to recruit new members.



21      D. The Danger to the Community Created by Defendant's Release, and the Risk

22        of Defendant's Flight Both Weigh in Favor of Detention

23           i.    *Defendant Poses a Substantial Risk of Danger to the*

24               *Community*

25          Defendant poses a substantial risk of danger to the community if he is

26  released. Defendant believes that he and his fellow Proud Boys are "Patriots," who

27  are going to "bring back that original spirit of 1776 of what really established the

28  character of what America is. And it's not complacency, it's not low standards. It's

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

'this is how it's going to be, and I don't give a god damn.'" By his own admission, Defendant participated in the Capitol riot because he does not accept the result of the Presidential election, and has declared "No democracy, no peace." Defendant stated, both before and after the riot, that the police—and those that support them—are part of the problem.

There is no reason to believe that Defendant, or any of his Proud Boy associates, are any more interested in "complacency," or any less interested in fomenting rebellion, than they were on January 5. If nothing else, the events of January 6, 2021, have exposed the size and determination of right-wing fringe groups in the United States, and their willingness to place themselves and others in danger to further their political ideology. Releasing Defendant to rejoin their fold and plan their next attack poses a potentially catastrophic risk of danger to the community.

### ii.    *Defendant Poses a Serious Risk of Flight*

Defendant also poses a serious risk of flight. The United States is aware of social media statements by Defendant indicating a desire to move and "start a new life." These statements, coupled with Defendant's apparent possession of a valid, U.S. Passport issued to someone else who bears some resemblance to Defendant, create serious concerns about Defendant's intentions had he not been arrested on February 3. Were Defendant to obtain his release and acquire another such passport, it would become exceedingly difficult to ensure his presence for trial.

### **CONCLUSION**

There is no condition, or combination of release conditions, that could guarantee both Defendant's presence for trial and the safety of the community if he is released. Further, all four of the Bail Reform Act factors weigh heavily in favor of detention in this case. This case is being prosecuted by Assistant U.S. Attorneys James B. Nelson and Jason McCullough of the District of Columbia.  They are primarily responsible for this case and have provided the factual information included in this pleading.

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    WHEREFORE, the United States respectfully requests that the Court issue an

2  Order granting the United States' motion that the defendant be held without bond

3  pending trial.

4

5    DATED this 5TH day of February, 2021.

6                                        Respectfully submitted,

7
                                         BRIAN T. MORAN
8                                        United States Attorney

9

10                                       s/ Jehiel I. Baer
                                         _____
11                                       JEHIEL BAER
                                         Assistant United States Attorney
12                                       700 Stewart Street, Suite 5220
                                         Seattle, WA 98101-1271
13                                       Telephone:   (206) 553-4169
                                         Fax:         (206) 553-2502
14                                       E-mail:      Jehiel.Baer@usdoj.gov

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORADUM IN SUPPORT OF PRETRIAL DETENTION

*U.S. v. NORDEAN (21-MJ-67)* - 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE
5220
SEATTLE, WASHINGTON 98101
(206) 553-7970