CHIEF MAGISTRATE JUDGE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. MJ21-67-BAT |
| Plaintiff, | ) | |
| v. | ) | DEFENSE RESPONSE TO UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION |
| ETHAN NORDEAN, | ) | |
| Defendant. | ) | |

In its 21-page memorandum, the government repeats the Complaint, recounts activity protected by the First Amendment, makes assumptions disconnected from facts, and ignores those facts that undermines its position. The government also asks the Court to draw negative inference upon negative inference, with little regard for the individual before the Court. The Court should decline this invitation and, despite the media attention and nature of the charges, do what the Court regularly does—assess the facts to determine whether there are conditions or a combination of conditions that will reasonably assure Ethan Nordean's appearance as required and the safety of others and the community. Because he poses neither a flight risk nor a danger to others or the community, the defense respectfully asks that the Court deny the government's motion for detention and release Mr. Nordean subject to the conditions recommended by Pretrial Services. The Court can also craft other conditions of release if the Court has additional concerns not addressed by those recommended by Pretrial Services.

DEFENSE RESPONSE TO UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION
(*United States v. Nordean*, MJ21-67-BAT.) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

I.      **Legal Standards**

The Bail Reform Act (BRA) provides for release of a person upon "any condition or combination of conditions" if those conditions "will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

The government asks this Court to detain Mr. Nordean in part on the theory that the offense of depredation of a government property is a crime of violence. *See* Dkt. 7 at 15. The government's claim is incorrect as a matter of law because depredation of property does not necessarily involve the use or threatened use of force.[1] A very recent Ninth Circuit decision, *United States v. Wasson,* -- Fed. Appx. --, 2021 WL 50175 (Jan. 6, 2021) (unpublished), illustrates the breadth of the depredation statute and why this Court should hold § 1361 does not constitute a crime of violence. Wasson unlawfully established a semi-permanent campsite on land owned by the United States Forest Service. He disturbed and damaged surface resources within a riparian habitat conservation area, caused the loss of a riparian area, removed native vegetation, and allowed unknown liquids to leak into the ground. His unlawful establishment of a camping area involved no use of force but, the Ninth Circuit held, did constitute depredation of government property. *Id.*

Moreover, there is not probable cause that Mr. Nordean aided and abetted the depredation of property valued at greater than $1000. The value of the property allegedly damaged is essential to the questions of whether the § 1361 charge is a crime of violence and whether it triggers a presumption of detention pursuant under §

---

[1] Without analysis, the government suggests 18 U.S.C. § 1363 is "substantially similar" to § 1361. Section 1363 involves the willful and malicious destruction of property, while § 1361 – the offense charged against Mr. Nordean – involves "*any* depredation of property."

DEFENSE RESPONSE TO UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION
(*United States v. Nordean*, MJ21-67-BAT.) - 2

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

3142(e)(3)(C). The Complaint charges only "Aid and Abet Injury or Depredation Against Government Property," with no specification of the property value. *See* Dkt. 1.

The affidavit includes a section describing the "Purpose of Affidavit." That section explains that the affidavit is offered to establish probable cause that, amongst other things, Mr. Nordean aided and abetted others causing damage to government property valued at more than $1000. This statutory reference is the only mention in the affidavit of the value of the property. Not a single factual allegation in the complaint attempts to value the property allegedly damaged. Because the government has not charged the property value and has failed to supply a basis for a valuation, this Court cannot assume that more than $1000 is at issue. Consequently, the Court should not accept the government's invitation to find that Mr. Nordean has been charged with a violent offense or one that carries a statutory presumption of detention.

However, even if the Court does find that a presumption of detention applies, Mr. Nordean can meet his burden. Where the presumption of detention applies, the burden is on the defendant to show some evidence in rebuttal. However, the burden is not substantial—if a defendant produces *any* credible evidence as to one of the § 3142(g) factors, it is met. The burden then returns back to the prosecutor to prove, by clear and convincing evidence, that no condition or combination of conditions could reasonably secure the safety of the community, and flight risk by a preponderance of the evidence. *See* John L. Weinberg, Federal Bail and Detention Handbook 2018 [6.11], PLI Press (New York, 2018); *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) ("If a defendant proffers evidence to rebut the presumption of dangerousness, the court considers four factors in determining whether the *pretrial detention standard* is met…") (emphasis added); *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) ("The [defendant's] burden of production is not a heavy one to meet.").

DEFENSE RESPONSE TO UNITED STATES'
MEMORANDUM IN SUPPORT OF PRETRIAL
DETENTION
(*United States v. Nordean*, MJ21-67-BAT.) - 3

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

**II.    Mr. Nordean Does Not Pose a Danger to Any Person or the Community**

The gravamen of the government's argument is that Mr. Nordean is a member of the Proud Boys and therefore a danger. This argument ignores Mr. Nordean's life history and the specifics of the allegations against Mr. Nordean.

*a.  History and Characteristics of Mr. Nordean*

Mr. Nordean has no criminal history. While making no mention of this fact, the government instead mentions that Mr. Nordean became "'internet famous' for knocking out a counter-protestor during a street brawl." Dkt. 7 at 2. What the government does not disclose is that this counter-protestor first swung at Mr. Nordean with some sort of rod[2] and, despite the interaction being caught on video and amplified online, Mr. Nordean was never charged with or convicted of any wrongdoing. It is his clean criminal record that the Court should consider, not the inferences the government asks the Court to draw based on its limited retelling of this incident.

Mr. Nordean's alleged membership in the Proud Boys does not make him a danger to others or the community. In its memorandum, the government makes broad accusations without evidence, and the Court should scrutinize these accusations with a critical eye. For example, the government describes the Proud Boys as a "militia," insinuating its members are an armed quasi-military force. No evidence supports such an allegation. The government draws attention to a January 8, 2021, writing on the website Parler and jumps to the conclusion that Mr. Nordean was "apparently making light of the United States Capitol Police officer who was killed during the riot" and other officers injured. Dkt. 7 at 13. No evidence supports that reading of this social media post. Rather, a natural reading of the post and the attached photograph showing a

---

[2] *See, e.g.,* Who are the Proud Boys, 'western chauvinists' involved in political violence? | The far right | The Guardian ("Ethan Nordean, a muscular 28-year-old from Washington state, was captured on video fending off two baton blows from a masked counter-protester.)

DEFENSE RESPONSE TO UNITED STATES'
MEMORANDUM IN SUPPORT OF PRETRIAL
DETENTION
(*United States v. Nordean*, MJ21-67-BAT.) - 4

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1 police officer spraying something in the face of a seemingly elderly and unarmed
2 protestor is that Mr. Nordean was voicing his opposition to that type of police action.
3   The government is apparently offended by Mr. Nordean's appearance on Info
4 Wars, but does not describe what Mr. Nordean himself said during the interview.
5 Actually watching the video reveals that while the host Alex Jones was exuberant about
6 the Portland incident, and does the majority of talking, Mr. Nordean explained that
7 there was not a big celebration afterwards and that he was concerned about the safety of
8 those around him. He explained he does not believe people should fight others just
9 because they have a different ideology. He also explained that Antifa members, like the
10 person who came at him, do not pose serious physical threats; he encouraged others to
11 come to rallies, with that assurance that they wouldn't be at risk but Mr. Nordena did
12 not promote violence. The Alex Jones interview is available at
13 https://www.youtube.com/watch?reload=9&v=2orRPKbRl4M (last visited Feb. 7,
14 2021), and the interview includes footage of the Portland incident. That footage also
15 shows that, immediately after the moment the government focuses on, Mr. Nordean
16 walked away from another Antifa member who approached him.
17   Neither his record nor his participation at protests can fairly be used to paint Mr.
18 Nordean as a violent or dangerous person.
19   *b.  Nature and Circumstances of the Offenses Charged*
20   Mr. Nordean's beliefs, as set out in the Complaint and the memorandum, were
21 not unique. Thousands of people descended on Washington, D.C. on January 6, 2021,
22 to protest the result of the 2020 presidential election. Egged on by Donald Trump, other
23 politicians, his legal advocates, and news media these people believed the election had
24 been stolen. Hundreds if not thousands of people entered the Capitol building as Mr.
25 Nordean is alleged to have done.
26

DEFENSE RESPONSE TO UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION
(*United States v. Nordean*, MJ21-67-BAT.) - 5

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1       Unlike many facing charges related to January 6, 2021, Mr. Nordean does not face allegations of conspiracy or assault, or even personally causing any damage to any property. As the Court is well aware, there is an enormous amount of documentation of the events of January 6. The government, the media, and private individuals have pored over footage to identify those involved in the protests and those who committed acts of violence and property destruction. While the government devotes a portion of its lengthy memorandum to the statements and actions of *other* alleged members of the Proud Boys, none of the footage suggests that Mr. Nordean *himself* was involved in anything more serious or sinister.[3] And, for the purpose of this hearing, the focus must be on what he is alleged to have done. The government's guilt-by-association arguments should be rejected.

      The government attributes significance to what it describes as a brief interaction between Mr. Nordean and another individual, Robert Gieswein, before another person, Dominic Pezzola, allegedly broke a window and Mr. Gieswein climbed through it. It is unclear what this brief interaction involved, how long it lasted, whether there was contact between Mr. Gieswein and Mr. Pezzola after the apparent exchange between Mr. Nordean and Mr. Gieswein, or how much time passed between the exchange between Mr. Nordean and Mr. Gieswein and Mr. Pezzola's alleged breaking of the window. The government includes in its memorandum a photograph of Mr. Gieswein standing near and looking towards Mr. Nordean, but the two do not even appear to be making eye contact. If the government knows the content of Mr. Nordean's alleged "brief exchange with Robert Gieswein" (Dkt. 7 at 7), it should provide those details.

---

[3] The government appears to have mislabeled a photograph at Dkt. 7, page 8, captioning it "Defendant Enters the Capitol." The image does not depict Mr. Nordean entering the Capitol building. There are no pictures showing Mr. Nordean entering the building and pictures from inside the Capitol that the government alleges show Mr. Nordean show a person in a sea of others. Dkt. 7 at 8-9.

DEFENSE RESPONSE TO UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION
(*United States v. Nordean*, MJ21-67-BAT.) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  With no such information, the government asks this Court to infer something that the
2  government is unable to prove, which is not permitted, even by way of a proffer.

3    The government also seems to argue that Mr. Nordean is more dangerous based
4  on online suggestions that Proud Boys wear "black" or protest "incognito." This
5  argument is contradicted by the photos that the government includes of Mr. Nordean at
6  other protests in which he is wearing clothes indistinguishable from those he wore on
7  January 6, 2021. Dkt. 7 at 6. The argument also ignores that Mr. Nordean made no
8  effort to disguise himself or, again according to the government's memorandum, his
9  views. Mr. Nordean allegedly led a group of people who chanted "F*** Antifa," not the
10 type of chant someone would lead if he was trying to remain "incognito." It is telling
11 that in the absence of any evidence that Mr. Nordean engaged in any acts of violence,
12 that the government resorts to suggesting that the vest, a protective garment, somehow
13 signifies aggression.

14   c. *Weight of the Evidence*

15   The Court should consider that, with regard to Count 1, the government has
16 alleged only that Mr. Nordean aided or abetted the depredation of government property.
17 The government is not claiming that Mr. Nordean himself damaged any property.
18 Rather, the government believes that Mr. Nordean "appeared to engage in a brief
19 exchange" with Gieswein and that sometime later Gieswein climbed through a window
20 broken by Dominic Pezzola. Dkt. 1 at 8. As this tenuous claim is the only basis for the
21 government's motion for detention and this is the extent of the government's theory, the
22 weight of the evidence supports Mr. Nordean's release.

23   d. *The Nature and Seriousness of Any Danger Posed*

24   The allegations do not suggest that Mr. Nordean poses an ongoing danger. In its
25 memorandum, the government argues that Mr. Nordean should be detained because he
26 does not support the results of the election, believes the police are part of the problem,

DEFENSE RESPONSE TO UNITED STATES'
MEMORANDUM IN SUPPORT OF PRETRIAL
DETENTION
(*United States v. Nordean*, MJ21-67-BAT.) - 7

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

and because of other notions pulled from social media postings. These vague statements – protected by the First Amendment – do not make Mr. Nordean an ongoing, uncontainable threat. If the Court has concerns about Mr. Nordean's relationship with the Proud Boys, the Court can impose bond conditions that address those concerns and Mr. Nordean is amenable to such conditions.

### III.   Mr. Nordean is Not a Flight Risk

The government also alleges that Mr. Nordean poses a flight risk. The basis for this claim is difficult to discern. Mr. Nordean is a lifelong resident of Auburn, Washington, and his family lives in the area. His parents own restaurants and property in the area and while they have publicly rejected the Proud Boys, they love their son. Mr. Nordean has a daughter and she spends time with both Mr. Nordean and her mother, who also lives in the area. Mr. Nordean is married, lives with his wife, and his wife's family also lives in the area. Mr. Nordean's ties are to this area alone.

In its claim that Mr. Nordean poses a flight risk, the government also ignores the circumstances of his arrest. Mr. Nordean was not at home when the agents arrived there, but he returned home when his wife called him to let him know that federal agents had arrived with a warrant for his arrest. These are not the actions of a man who is seeking to flee.

The government also argues that Mr. Nordean is a flight risk because of a passport issued to another person found at his home. Had the government attempted to investigate the circumstances before asking the court to infer nefarious intent from its presence, the government would have quickly learned that this person is the ex-boyfriend of Mr. Nordean's wife. A defense investigator spoke with this person over the weekend, and he explained that when he left his ex-girlfriend he took only keepsakes and left behind much of his property. He has no concern that his passport remained in his ex-girlfriend's possession. Mr. Nordean's wife explained that she held

DEFENSE RESPONSE TO UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION
(*United States v. Nordean*, MJ21-67-BAT.) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

on to the passport because she was unsure what to do with it. This person also bears no resemblance to Mr. Nordean, other than being a white man. From the government's own memo, here are images of the two men for comparison:

 

They do not look alike. Mr. Nordean is also several inches taller and many pounds heavier than this individual.

Simply, Mr. Nordean – with his lifelong ties to this area and demonstrated willingness to address the charges – does not pose a flight risk.

## IV. CONCLUSION

Mr. Nordean's continued detention is unnecessary to reasonably assure the safety of others and the community and his appearance. Accordingly, the defense asks the Court to deny the government's motion and release Mr. Nordean subject to the conditions proposed in the Pretrial Services Report.

DATED this 8th day of February 2021.

Respectfully submitted,
s/ *Corey Endo*
Assistant Federal Public Defender
Attorney for Ethan Nordean

DEFENSE RESPONSE TO UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION
(*United States v. Nordean*, MJ21-67-BAT.) - 9

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100